We'll call our next case, which is In Re AMGEN 25.193. Morning, counsel. Morning. May it please the court, Josh Fuggera on behalf of AMGEN. I would like to reserve four minutes for rebuttal, if you could. Thank you. The district court made three... Just speak up. Move the mic closer. There you go. The district court made three legal errors, each of which constitutes an abuse of discretion requiring reversal. I want to start with the burden of proof because it infected the whole decision. Section 1782 and binding precedent placed the burden on Sandoz to show that AMGEN's requests were unduly burdensome under Intel Factor IV. But the district court held that because Sandoz chose to defend against AMGEN's Section 1782 application by arguing that Sandoz lacks control over certain documents, this defense fundamentally altered the burdens of proof under Section 1782. In the district court's and Sandoz's view, Federal Rule of Civil Procedure 34 presents an additional threshold requirement and places the burden on AMGEN. That position is directly contrary to the statutory text and binding case law interpreting it. After AMGEN made a modest prima facie showing under the statute, that's from Bayer 1, it was Sandoz's burden to show that the application should be rejected or trimmed as unduly burdensome, including through a lack of control. Let me just get in here real fast because you're putting the analysis of possession, custody, or control in Intel Factor IV, which is burdensome.  And possession, custody, and control in standard discovery is a very different inquiry than burden, much like privilege is a different interest. You could always say, oh, making me cough up privilege documents is a burden. I guess you could put it through that lens. But possession, custody, and control doesn't fit into Intel Factor IV. You can't be burdened. If someone asked Sandoz to produce docs from ExxonMobil, they wouldn't say, oh, that's a huge burden. They would say, we don't have any. That's impossible. So it's not discretionary. Intel Factor IV is what's discretionary. I don't think a court can, in its discretion, tell a company to produce docs that it doesn't have in its possession, custody, control. Do you think a court can do that? Do you think it has discretion to tell someone, these docs aren't in your possession, custody, or control, but you sure better produce them? I think a court has discretion to look at possession, custody, or control. And the burden of proof to show that is going to affect how the record looks. And so if a court then looks at that record and says, I don't think you have control, that's an exercise of the court's discretion under Intel Factor IV. But Intel only governs. The Intel Factors only govern discretionary judgments. And I'm not sure that possession, custody, or control is a discretionary judgment because I don't think that a court can come and say that, yeah. I have the discretion to tell you to produce documents that aren't in your possession, custody, or control. I think that courts – that's just beyond a court's power. 1782 notwithstanding, Rule 34 notwithstanding, Rule 45 notwithstanding. The court has to make that factual determination about possession, custody, or control. And Section 1782 has, as this court and the Supreme Court in Intel said, has three very modest prima facie requirements. This court said after you satisfy those, then it is on the party resisting discovery to show. And so here's what the burden of proof – But that's – I understand that model, but that model can't be complete, can it? You're saying it's either a prima facie case or it's Intel Factor IV. But prima facie cases and burden shifting aren't the entire equation. In Title VII, there's the most comprehensive, elaborate burden shifting framework known. A party can still come forth with a statute of limitations defense that's completely outside of that burden shifting framework.  Isn't possession, custody, or control completely outside of the burden shifting framework because it certainly, in my view, doesn't fit within Intel Factor IV? That's a stretch, no? It's completely outside of the statutory factors under Section 1782, which then puts it under the district court's discretion. And I want to be clear about what the burden of proof holding of the district court means here. It means that the next Sandoz Inc., who is the target of a Section 1782 application, can show up in court and say this is unduly burdensome because I do not have control over the documents. And that – under the district court's holding, that entity wins based on the absence of evidence and the burden of proof. That's it. Well, I mean obviously there would be discovery on discovery at that point in time. Obviously, you could begin to say, hey, well, you say you don't have control. We'd like to discover on what your degree of control is. Obviously, if they point to someone else that has control, you can 1782 that entity. But that's not the end of the world here. But that never happened here, and the district court put the burden of proof on us to say that they don't have control, and we – that's something in there. I mean we don't have the evidence to show the lack of control. Are you prohibited from doing what I'm calling discovery on discovery in that scenario? You couldn't have said, hey, look, you say you don't have these. We want to know what your agreements are. Can't you do that or is there some limitation on that? You could – certainly the district court in exercising its discretion under the intel factors could do that. All Section 1782 says is if you meet these modest prima facie requirements and what this court said in Bayer 1 is then it is presumptively discoverable. Then the burden shifts to the other side to say, for example, either – I mean Bayer 1 was pre-intel. Either it's unduly burdensome because I lack possession, custody, or control or just I lack possession, custody, or control. The district court's ruling means that that entity then wins. Yes, there could be discovery on discovery, but that's not what this burden of proofholding means. This burden of proofholding means that it was on Amgen to show that this was – that its own discovery requests were unduly burdensome and intrusive because there was a lack of control when Amgen has no insight whatsoever into that inquiry. Are you asking us to send this back to the district court for the court to determine – for Sanders to come convince the court that they don't have the documents? Yes. I mean that is what you're asking us to do. Certainly, yes. On the burden of proof, that is the threshold inquiry. The burden of proof infected the district court's decision at every step. It said in the opinion 10 times that it was relying on the burden of proof. The record was therefore developed under a mismatch burden, and I want to read a quote from the hearing because I think it is telling about the extent to which the district court was leaning into the burden of proof. This is at A672. The district court talking to Sanders' counsel says, and so I guess I'm trying to figure out, like, if in the end I have to make a decision about whether or not control has or hasn't been established, whose burden is it to make that showing? And if I think it's kind of like 50-50, you know, who do I hold that against? The district court held that against us, and our position is that's flatly inconsistent with this court's precedent in section 1782. At that point, yes, we don't know how the district court would have exercised its discretion under a record that was developed under the right burden of proof. We don't know if we would have, if Sanders would have produced that document, if we would have been able to probe what the, you know, first curated version of it, the CMA, meant. Take a deposition, ask them, okay, you say that this document completely precludes discovery in this section 1782 application, but it seems to actually show that you can get discovery in a lot of other instances. That's the kind of thing that would have and should have happened had the burden of proof been put in the right place. Do you have a case that says that questions over possession, custody, or control should be viewed through Intel Factor IV burden? I don't have that specific case at hand. I mean, do you have any discovery case under Rule 34 that says that possession, custody, or control is going to be viewed through the unduly burdensome lens? I mean, I think that's often how it comes up, because if you serve a discovery request, you have to rule 34 says it has to be in possession, custody, or control. They can then move to quash, for example, seek a protective order saying this is unduly burdensome. I don't have this stuff, and that's what happened here. They said under Intel Factor IV this is unduly burdensome because we don't have control, and our position is that is exactly what Section 1782 and this court's precedent puts on them. I see that I'm already down to my rebuttal, and I haven't talked about the control standards. You come back on rebuttal. What's that? You have two minutes. Oh, okay. Sorry. So yes, absolutely, Judge Restrepo, that is our baseline position. When a district court applies the wrong legal standard, that is inherently an abuse of discretion. We don't know how this would have shaken out under the correct record, and in fact, as our second set of arguments show, we think it absolutely would have shaken out differently. Control is about the legal right or ability to access documents. Now I'm just talking about Novartis. If you have an agreement with another party, the CMA, to access documents for all kinds of self-interested business needs in the ordinary course of business, that shows control. You cannot simply gerrymander your way out of a legal right to produce documents in third-party discovery. If there's one thing that comes through in this court's case law and in all the case law talking about control, it's that formalism and rigid tests don't work, and that's exactly what happened here. Sandos is saying that under the CMA, it can get documents from Novartis for all kinds of self-interested reasons, but it cannot get them when it has to respond to Amgen's Section 1782 application because of the word subpoena. That's not control. Gerling says that's not control, or excuse me, that is control. Gerling says it's control, and lots of other cases say it's control. The legal right or ability is satisfied in that circumstance. And same for the sister entities. We think the district court, again, applied an overly rigid standard by saying under the second prong, participating in the litigation means that somebody had to be an active participant. Again, the consequences of the district court's rule mean that Sandos always wins in the 1782 context. If you're going after a U.S. entity for discovery held abroad, which is what the statute is about, then the applicant can simply keep its sister entity on the sidelines of the litigation, and it wins every time under the district court's rule. That's incorrect, and we think it's inconsistent with Gerling. And now that I'm actually to the end of my time, unless the court has any further questions, I'll reserve for rebuttal. I'll see you in rebuttal. Thank you. Thank you, Your Honor. May it please the court. I'm Joseph Palmore here on behalf of Sandos, Inc. The district court did not abuse its discretion in ordering Sandos, not ordering Sandos, Inc., to produce documents that are not in its possession, custody, or control. Did the district court reverse the burden? The district court correctly imposed the burden on Amgen. That is consistent with more than 50 years of precedent under Rule 34. And I didn't hear my friend on the other side reiterate the argument from his briefs. They've said, oh, actually, Rule 34 doesn't impose the burden on the party seeking discovery. He cites not a single case for that, and every single case in a court of appeals or a district court to address the burden issue under Rule 34 has correctly imposed it on the party seeking discovery. And with respect to 1782, there should be no difference. The text of 1782 says the federal rules of civil procedure apply. One of the federal rules of civil procedure is Rule 34, of course, and an inherent part of the burden under Rule 34 is that the burden to establish custody or control. So on 1782 and its reference to Rule 34, Intel footnote, I want to say 11, says that the best way to read that passage in 1782 is to view it in terms of the form and procedures for production and maybe form and procedure. And I think the dispute was should they be produced as a – kept in a regular course of business or should they be produced in response to specific request inquiries? But do you think that that footnote 11 and the notion that just governs the procedure for production would apply to something maybe a little more threshold like production, possession, custody, or control? I don't think so, Your Honor. I mean I think that footnote is addressing something entirely different. That part of Intel's – it was addressing this foreign discoverability requirement. Some courts pre-Intel had said 1782 discovery is available only if it would be discoverable in the foreign jurisdiction, and the Supreme Court rejected that. And it dropped a footnote saying – and nothing about this incorporation of the rules of civil procedure really addresses that issue one way or the other. And here, of course, Rule 34 is a rule of practice and procedure, and the burden is inherent in it. And I want to go to your question about Factor 4 and the kind of the Intel factors, the discretionary factors that govern when a 1782 application is filed. Those are completely separate from these kind of gating requirements of the federal rules of civil procedure. And you're exactly right, Judge Phipps, that this issue of possession, custody, or control is different from burden, right? It goes to respect for the corporate form. It goes to whether someone can be compelled to provide documents that they don't have. And you're also right that there can be discovery on discovery, and there actually was. There was – in the first 1782 petition in this case, one of the questions that Amgen asked was provide us all documents that establish your control or ability to access documents from Sandoz, GMBH, and WACC. Mr. Palmore? Yes. Even if Rule 34, there's some gating issue that could overcome Bayer 1, there's nothing in Rule 34 that allocates or specifies a burden. You're right, Judge Phipps. I don't think the text… Current version of the rule. There were previous versions of the rule. There's case law built on them, but that's not in the current Rule 34. I don't think – I think you're right that there's nothing that addresses burden one way or the other in the actual text. However, it has long been reasonably understood to impose… Also, the pre-1970 version of the rule, which no longer governs us. I disagree, Judge Bibas, because the courts have consistently, post-1970, applied the same rule that the burden is imposed on the party seeking… They've been citing pre-1970 cases like the Tenth Circuit. But they've – and that Tenth Circuit pre-1970 case separately addressed good cause and burden. And then when the Rules Committee took out the good cause requirement, you can read why they did it. It's in the committee notes. They explained that it was too confusing. No one knew what it meant, and it was unnecessary. They said nothing about burden. They said nothing about possession, custody, or control. And in fact, the rule has been repeatedly amended in the years since against the backdrop of an unbroken line of cases imposing control on the party seeking discovery. And never once has the committee said anything about that, suggested that that was wrong, and they've essentially ratified or acquiesced in that. Is Rule 34 even the place we should look for finding if there is a burden? The way that you get document discovery to be produced is either through a motion to compel, or if you're really worried about it, you can seek a preemptive motion for protective order. So is the absence – I mean does what Rule 34 says in any way about burden? If it's completely silent on that, that matches my intuition perfectly. That's not the place I'd look to find burden. I'd look to find burden on the motion parts of the rules, the rules that say this is how to go about and achieve your Rule 34 victory, not in Rule 34. I mean I think that may be right, Your Honor. I mean this comes up in Rule 45 also, and I think that goes to show why it is entirely sensible to place the burden on the party seeking discovery because Rule 45 subpoenas go to non-parties. It would be quite remarkable if you could issue a subpoena to a non-party and say, we want these documents, and the non-party says, what are you talking about? Those are in the possession of General Motors in your hypothetical. And then the party seeking the document said, well, prove it. Prove to me you don't have control over those documents. That would be a remarkable rule of law. And just to finish my thought on the discovery on discovery, at A279, you look in the record here. We looked for those documents. They asked for discovery on discovery. Give us the documents that establish your control or ability to access those documents. There were none. We found none. That's at A279. With respect to the kind of merits of it, I didn't hear my friend on the other side suggest that they can win if they don't win on the burden. So I think if the – The record is not one where we can find this harmless. I mean, you suggest this, but it's far from clear that we could just make any error on the burden. I think you could, Judge Vivas. The Second Circuit in the Aguilas v. J.P. Morgan case that we cite that was decided just last June did exactly what we suggest this court could do. If it doesn't want to decide the burden question, it could affirm saying regardless of who bore the burden, the discovery was appropriately denied here. Because it's not like this is a case where there's an absence of evidence. There's an absence of evidence of documents showing our control of the LECC GMBH documents because there are none. So Amgen just doesn't like that answer, but that doesn't mean that they didn't have the opportunity to get that information. But are you telling us at the end of the day these documents are not there? That we don't have control over these documents. Regardless of whether – if we bore the burden of establishing lack of control, we bore that burden and discharged it. That's what I'm suggesting, Judge Restrepo. It's important to take a step back and understand that this is litigation in Europe between Amgen and European companies. And then they're trying to use the 1782 proceeding to get documents from their opposing party in Europe. They want the documents to be sent from Europe here to Sandoz Inc., given to Amgen here in the United States, and then they want to send it back to Europe and use it there. What the Second Circuit held in the Kiebel case is when you have – the documents are being sought from the real party in interest is the counterparty in the foreign litigation. There's no need for 1782. They can get it there. They're already in litigation in Austria against Sandoz GMBH. Can I just ask an extra record question? I know that there was a motion to expedite this case to kind of account for the status of the European litigation. Is that still – we don't have a mootness problem or anything like that here. Is that still ongoing? My understanding is that litigation is still ongoing, pending in Austria. I believe it stayed for some separate invalidity litigation, but my understanding is that is still going, still ongoing. You're right that they – Amgen originally said we urgently need this information to get a preliminary injunction before this product is launched in Europe, and the product has already launched. But they would know more than I do about the need for this litigation, these documents now. But just going back to the point about – that Sandoz did provide information. So we look for information on GMBH and LAC and our – and we have no ability to control or to access those, no legal right to access those documents. And on Novartis, which is a completely separate publicly traded company, we were spun off in 2023. We have no right to control those documents either. This court in Gerling said that control means a legal obligation to provide documents on demand. Put another way, would you be breaching some kind of duty if you didn't provide the documents? We actually provided the contract. So, again, we – there's not an absence of evidence here. We provided the evidence, and it just doesn't – it doesn't say what Amgen wanted to say. That's not – that doesn't mean that it's not there. So under that agreement, Novartis did allow for limited sharing of information under certain specified circumstances. This is not one of them. Responding to a subpoena is not one of them, and that's very reasonable. I'd like to hear why it's reasonable because it feels like a subpoena carveout would sure be very convenient at times to just say, hey, we'll share documents all day long with each other, but we'll never do it in response to a subpoena. Hence, we have no control, and so you could imagine that there would be reasons that courts might not really like the enforceability of that subpoena prong if you could just say, oh, anytime you get a subpoena, if we need them for any other reason, we'll just give them to you. But if it's a subpoena, then no, no, no, no. No rights there. Don't you think that's a little – you were about to say it's reasonable, and I'm positing a world where it might be capable of abuse. You want to just kind of… Sure. I mean, there might be a world in which it's capable of abuse, but this is not that world, Judge Phipps. If this is not, you can have any of our documents for any reason under the sun except for responding to a subpoena. There you can look at the agreement. It's for very limited purposes. I'm sorry. Look at the agreement. It's for very limited purposes, and they expressly carve out subpoenas, and that is quite reasonable because if someone wants to subpoena Novartis documents, they should serve a subpoena on Novartis. Not on Sandoz, Inc., a completely separate company, and vice versa, right? I mean that's the way these things normally work, and so if Amgen is going to tangle with Novartis in European litigation – they haven't filed any yet against Novartis, but if they do, then they can use that litigation to get the documents they need from Novartis instead of using Sandoz, Inc., which is a completely separate U.S.-based company as kind of a mail drop or a discovery conduit. So I think it's quite reasonable to have that carve out and make clear that if someone wants to subpoena Novartis documents, they should serve that subpoena on Novartis. And I think that Gerling, again, goes to this purpose issue because my friend on the other side says, well, if you've got access to the documents for some purposes but not others, that's not good enough. But Gerling addresses that question, right? There was a contract in Gerling which actually gave the U.S. company the right to inspect the books in Switzerland for a limited purpose. And what this court said was just because you have the contractual right to inspect those books for a limited purpose doesn't mean that they're within your control under the auspices of Rule 34 such that the IRS, who was the counterparty in that case, could access them for a completely different purpose. So just because under certain limited circumstances Sandoz, Inc. can access Novartis documents for certain limited purposes doesn't mean that we're off to the races and then they can be subpoenaed and get them for anything else. And I think that that legal obligation and control argument is critical. Gerling is kind of a foundational case in this area, and it's cited by other circuits as adopting the legal obligation test and rejecting a more kind of freeform, practical ability to access test. I would point the court to the Seventh Circuit's decision in Cheveriot, which says, well, just because you have the ability to ask and kind of go hat in hand to another party and ask for documents doesn't mean that you have control. In fact, that means the opposite. If you have to ask for them to do you a favor and give you the documents, that establishes a lack of control. And the Ninth Circuit's decision in NRA Citric Acid squarely rejects kind of a practical ability to access test and says, no, this is about a legal obligation and a duty to provide documents on demand. And this, after all, is all about the meaning of the word control in the rule. Control means power or authority over. And I think just to finish up where we started, if they are right that Rule 34 somehow applies differently in Section 1782 than it does elsewhere, that would be pretty remarkable. That would mean that discovery is even more favorable and more leaning toward the party seeking discovery when it involves foreign litigation than it does when involving U.S. parties and U.S. litigation. And I think that's counter to the text of 1782, which adopts the rules wholesale and would lead to kind of perverse consequences. 1782 is already admittedly expansive. 1782 does not adopt the rules wholesale. 1782 talks specifically – let's take a look at it. It talks about the procedures. The order may prescribe the practice and procedure, which may be in whole or in part the practice and procedure of the foreign company for taking it. And then the final sentence after that says to the extent the order does not prescribe otherwise, the testimony or statement should be taken, documented, or other things should be produced in accordance with the federal rules of procedure. So that sentence comes after two sentences that are talking about the practice and procedure for taking testimony. They don't talk about the substantive limits on what is discoverable. They don't talk – I mean this is about the ways in which depositions are conducted. It's not talking about burdens of proof for showing something discoverable. Practice and procedure is a more limited phrase, so I think you overstated the matter in talking about a wholesale incorporation. I respectfully disagree, Judge Bibas. This court in Bayer said that this is an incorporation of the standards for discovery in the federal rules of civil procedure. And the first sentence that you read allows for the district court under some circumstances to, for instance, adopt the kind of foreign rules of civil procedure. We haven't found a case where that's ever been done, but the drafters of the legislation seem to leave open that possibility. That wasn't – Amgen didn't ask for that here, so it was common ground that the federal rules of civil procedure would apply. And Rule 34 is one of those rules, and to use this court's words from Bayer, that burden of proof is one of the standards that's inherent in that rule, and every court to ever address the question has so helped. Thank you, Counselor. Thank you. I'd like to make a few points in rebuttal. The first, just picking up on that last colloquy, Section 1782 absolutely does not adopt the federal rules wholesale. It is both narrower and broader than the federal rules. It's broader in the sense that you can get pre-litigation discovery. It's also narrower in the sense that a bunch of federal rules don't apply. What Section 1782 also doesn't do, which Intel makes clear, is allow for non-statutory threshold gating requirements of exactly the kind that Sandoz is urging this court to elevate Rule 34 into. Judge Phipps, as to Rule 34 and where it belongs, Sandoz litigated this case as though it's under Intel 4. That's where the district court decided it, and therefore that's how we've presented it to this court. I also want to talk a little bit about the lack of discovery documents to show control because Mr. Palmore said that nothing exists. That's not the be-all and end-all of control. We know as to the sister entities, they can get documents because they've done it. As to the contract in Novartis, there was some questioning about whether it's capable of abuse, and the answer is absolutely. This is a self-interested carve-out. There's no purpose-based legal right for access to documents that says you can get it when the litigation suits your own needs, but you can carve out third-party subpoenas. That's exactly the kind of gamesmanship that the flexible control inquiry is allowed to protect against, and Gerling absolutely does not impose a purpose-based legal right test. Gerling says that when there was a very narrow contractual right to go on to foreign soil and audit documents to check math, that maybe that didn't also extend to allowing the IRS. Here we're talking about a contract that says you can get these documents when you want to for your own litigation needs, but we're saying that it somehow carves out a subpoena and that because our 1782 application attached a subpoena to it, that's the end of it. They have no legal right. There's no purpose-based legal right. They have a legal right to access these documents, and Gerling absolutely does not impose some sort of purpose-based legal right that would run counter to Congress's intent under Section 1782. And the final thing I want to say is just because there were a couple of questions about Europe and the suggestion that we should be going to these entities in Europe. Bayer 1, again, affirmatively refuted that point. It said there is no quasi-exhaustion requirement baked into Section 1782, which is exactly what that would ask for. Unless the Court has any further questions, I would urge the Court to reverse or, at a minimum, vacate and remand. Thank you very much. Thank you. Thank both counsel for their arguments and briefs. We'll take this matter under advisement and get back to you.